IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COBALT PARTNERS, LP, COBALT PARTNERS II, LP, COBALT OFFSHORE MASTER FUND, LP AND COBALT KC PARTNERS, LP,<br><br>     Plaintiffs,<br><br>  v.<br><br>SUNEDISON, INC., AHMAD CHATILA, BRIAN WUEBBELS, MARTIN TRUONG, ALEJANDRO HERNANDEZ, EMMANUEL HERNANDEZ, ANTONIO R. ALVAREZ, PETER BLACKMORE, CLAYTON DALEY JR., GEORGANNE PROCTOR, STEVEN TESORIERE, JAMES B. WILLIAMS, RANDY H. ZWIRN, GOLDMAN, SACHS & CO., J.P. MORGAN SECURITIES LLC, MORGAN STANLEY & CO. LLC, MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, DEUTSCHE BANK SECURITIES INC., MACQUARIE CAPITAL (USA), INC., MCS CAPITAL MARKETS LLC and DOES 1- 25, inclusive,<br><br>     Defendants.<br><br>AND RELATED CASES. | No. C 16-02263 WHA<br><br>*Related Cases:*<br><br>Case No. 3:16-cv-02264-WHA<br>Case No. 3:16-cv-02265-WHA<br>Case No. 3:16-cv-02268-WHA<br><br>**ORDER (1) DENYING MOTIONS TO REMAND; (2) GRANTING MOTIONS TO TRANSFER; (3) CERTIFYING ISSUE FOR INTERLOCUTORY REVIEW; AND (4) STAYING ACTIONS** |

**INTRODUCTION**

In these related securities actions, plaintiffs move for remand and defendants move for transfer to the United States District Court for the Southern District of New York for referral to bankruptcy court. For the reasons stated herein, the motions to remand are **DENIED** and the

motions to transfer are **GRANTED**. The Court also certifies the following issue for interlocutory review under 28 U.S.C. 1292(b): whether Section 22(a) of the 1933 Securities Act bars removal of actions "related to" a bankruptcy action pursuant to 28 U.S.C 1452(a).

## STATEMENT

Before the Court are four related actions brought by purchasers of securities issued by defendant SunEdison, Inc. and its partially-owned affiliate TerraForm Global, Inc. ("Global"). At all material times, SunEdison, now bankrupt, financed, built, and operated renewable energy projects across the world. Global is an affiliated company known as a "yieldco," which was created to purchase and operate renewable energy projects developed by SunEdison.

The nub of all four lawsuits is that defendants violated various securities laws by failing to disclose information related to SunEdison's debts and weakened liquidity. Specifically, plaintiffs allege that defendants neglected to disclose that:

- SunEdison had breached the debt covenants of one of its borrowing agreements and was required to post hundreds of millions of dollars in additional collateral as a result.
- SunEdison had borrowed $169 million at an effective interest rate of 15 percent to raise the funds it needed to acquire projects for Global and/or to cure the debt covenant breach.

All four actions assert claims under Sections 11, 12, and 15 of the Securities Act of 1933 regarding a preferred stock offering by SunEdison, which took place on August 18, 2015. Two of the lawsuits, *Omega* and *Glenview*, also bring claims for violations of the Maryland Securities Act, breach of contract, and negligent misrepresentation based on a private offering of Global Class D units that took place on June 9, 2015. The *Omega* complaint also asserts additional claims under Section 12 and 15 and the Maryland Securities Act related to a private offering of Global bonds that took place on July 31, 2015.

Of the four cases, only *Bloom* is a proposed class action. Plaintiffs in the other individual cases, *Cobalt*, *Glenview*, and *Omega*, are investment funds. Defendants in the four lawsuits are as follows:

- In *Bloom*, defendants are SunEdison and nine individuals who served as its officers or directors. Since the filing of the *Bloom* complaint, the parties have stipulated to dismissal of SunEdison (which stipulation is hereby approved).
- In *Cobalt*, defendants are SunEdison, officers and directors of both SunEdison and Global, and investment banks that served as underwriters to SunEdison's preferred stock offering.
- In *Glenview*, defendants are SunEdison, Global, fourteen individuals who served as officers or directors at one or both companies, and fifteen financial institutions that underwrote one or more of the offerings at issue.
- In *Omega*, defendants are SunEdison, Global, fourteen individuals who served as officers or directors at one or both companies, and ten financial institutions that underwrote one or more of the offerings at issue.

The actions were originally filed in San Mateo County Superior Court on March 28, March 29, March 30, and April 4, 2016. On April 26, 2016, SunEdison filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York, *In re SunEdison, Inc.*, et al., Case No. 16-10992 (Bankr. S.D.N.Y.). All proceedings against SunEdison are thus stayed pursuant to 11 U.S.C. 362(a). Defendants subsequently removed all of these actions pursuant to 28 U.S.C. 1452(a) as proceedings "related to" SunEdison's bankruptcy case.

In the bankruptcy action, SunEdison filed motions to modify the automatic stay to allow insurers to make payments pursuant to insurance policies that cover securities claims against SunEdison, the yieldcos, and their officers and directors (Bartlett Decl., Exhs. 4–5). The bankruptcy court granted SunEdison's motions, permitting the insurers to make payments under the polices in connection with these and other securities actions of up to: (1) twelve million

1  dollars as to Global, the other yieldcos, and their officers and directors; and (2) eight million
2  dollars as to the officers and directors of SunEdison (Bartlett Decl., Exhs. 6–7).

3      A prior order related these four actions. Another cluster of actions regarding Global's
4  IPO is proceeding before Judge Beth Labson Freeman. *See, e.g., Beltran v. TerraForm Global,*
5  *Inc. et al.*, Case No. 5:15-cv-04981 (the "Global IPO cases"). On July 27, 2016, a motion was
6  filed with the Judicial Panel on Multidistrict Litigation requesting transfer of these and ten other
7  actions to the Southern District of New York for coordinated or consolidated pretrial
8  proceedings. *See In re SunEdison, Inc. Securities Litigation*, MDL No. 2742 (Dkt. No. 1).

9      Now, plaintiffs in all four of the instant actions move to remand the actions to state
10 court. In addition, defendants in all four actions move to transfer the action to the United States
11 District Court for the Southern District of New York for referral to the bankruptcy court in that
12 district, or at least for more convenient coordination. Defendants in *Cobalt, Glenview,* and
13 *Omega* filed motions to dismiss, and these motions are set for hearing on October 13, 2016 (but
14 will be taken off calendar due to the stay discussed below).

15     This order follows full briefing, including supplemental briefing, and oral argument.

## ANALYSIS

**1.  MOTION TO REMAND.**

18     Federal courts are courts of limited jurisdiction, and a cause of action is presumed to lie
19 outside this limited jurisdiction until the party asserting jurisdiction establishes the contrary.
20 *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). In general, removal
21 statutes are strictly construed against removal. *Luther v. Countrywide Home Loans Servicing*
22 *LP*, 533 F.3d 1031, 1034 (9th Cir. 2008). A defendant has the burden of establishing that
23 removal is proper. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). However, a plaintiff
24 seeking remand has the burden to prove that an express exception to removal exists. *Luther,*
25 533 F.3d at 1034.

26     Defendants base their removal on 28 U.S.C 1452(a), which permits removal of an action
27 that is "related to" a bankruptcy action under Title 11. Section 1452(a) states:

28         A party may remove any claim or cause of action in a civil action
        other than a proceeding before the United States Tax Court or a

4

> civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

In turn, Section 1334(b) states:

> [N]otwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in *or related to* cases under title 11.

Thus, an action may be removed under Section 1452(a) if it is "related to" a bankruptcy action.

Plaintiffs make three main arguments in support of their motions to remand. *First*, plaintiffs argue that removal was not proper because these actions are not "related to" the SunEdison bankruptcy action. *Second*, plaintiffs assert that Section 22(a) of the Securities Act of 1933 bars removal of the complaints.[1] *Third*, plaintiffs argue that equitable factors warrant remand under Section 1452(b).

This order analyzes each of these arguments below.

### A. "Related to" Jurisdiction.

Defendants must show that the actions are "related to" a bankruptcy action for removal to be proper under Section 1452(a). Our court of appeals has adopted the Third Circuit's broad standard for determining "related to" bankruptcy jurisdiction from *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984). Under that standard, an action is "related to" a bankruptcy action if "the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988). "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Ibid.* (quoting *Pacor*, 743 F.2d at 994).

Defendants assert three separate bases for "related to" jurisdiction: (1) the rights of the individual defendants and underwriter defendants to indemnification from SunEdison under

---

[1] Plaintiffs in *Bloom* concede that the Court has discretion to deny the motion for remand but nonetheless urge the Court to remand the action on equitable grounds under Section 1452(b).

5

separate indemnification agreements; (2) the entitlement of the individual defendants to payments under directors and officers insurance policies purchased by SunEdison; and (3) the right of any defendant held liable to seek statutory contribution from SunEdison.  In addition, defendants in *Glenview* and *Omega* assert a fourth bases for "related to" jurisdiction: SunEdison's significant ownership in Global.  Defendants assert that any costs that Global incurs in responding to *Glenview* and *Omega* will diminish the value of the SunEdison estate's equity in Global.

Because this order concludes that the actions are "related to" the SunEdison bankruptcy on the basis of the indemnification rights of the individual and underwriter defendants, this order need not reach the other bases proffered by defendants.

Defendants contend that the actions are "related to" SunEdison's bankruptcy action because the individual and underwriter defendants are entitled to indemnification from SunEdison for the claims arising from the actions.  SunEdison's Amended and Restated Certificate of Incorporation provides as follows (Bartlett Decl., Exh. 1):

> The Corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the Corporation) by reason of the fact that he is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, to the full extent authorized or permitted by law, as now or hereafter in effect, against expenses (including attorneys' fees) judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding.

The Underwriting Agreements contain a similar provision (Bartlett Decl., Exh. 3):

> The Company agrees to indemnify and hold harmless each Underwriter . . . against any losses, claims, damages or liabilities, joint or several, to which they or any of them may become subject under the [Securities] Act, the Exchange Act or other U.S. federal or state statutory law or regulation, at common law or otherwise . . . and will reimburse, as incurred, the Underwriters . . . for any legal or other expense incurred . . . in connection with investigating, defending against or appearing as a third-party witness in connection with any such loss, claim, damage, liability or action.

The indemnification rights of the individual defendants give rise to "related to" jurisdiction. SunEdison's Amended and Restated Certificate of Incorporation requires it to indemnify the individual defendants as to any "pending" action "to the full extent authorized or permitted by law," including as to expenses such as attorney's fees. Under Delaware law, which governs SunEdison's articles of incorporation, defendants' rights to advancement of attorney's fees and costs have already accrued. *See In re RNI Wind Down Corp.*, 369 B.R. 174, 186 (Bankr. D. Del. 2007) (noting that under Delaware law, advancement is a "right whereby a potential indemnitee has the ability to force the company to pay his litigation expenses as they are incurred regardless of whether he will ultimately be entitled to indemnification"); 8 Del. C. 145(a). Indeed, the New York bankruptcy court has already authorized payment of proceeds from SunEdison's insurance policies to pay for attorney's fees related to these and other actions (Bartlett Decl., Exhs. 6–7). As such, the indemnification rights have already affected the administration of the bankruptcy estate. This order concludes that "related to" jurisdiction exists on that basis.

The indemnification rights of the underwriter defendants also give rise to "related to" jurisdiction under the "conceivability" standard. *Carpenters Pension Trust For S. California v. Ebbers*, 299 B.R. 610, 613 (C.D. Cal. 2003) (Judge Consuelo B. Marshall) ("Courts in the Ninth Circuit have held that a defendant's claim for contractual indemnity against an entity in bankruptcy gives rise to 'related to' jurisdiction."); *Pac. Life Ins. Co. v. J.P. Morgan Chase & Co.*, No. SA CV 03-813GLT(ANX), 2003 WL 22025158, at *1 (C.D. Cal. June 30, 2003) (Judge Gary L. Taylor).

Plaintiffs contend that the indemnification agreements do not provide the basis for "related to" jurisdiction because, to hold SunEdison liable, defendants would need to file a second lawsuit. For support, plaintiffs cite to the Third Circuit's decision in *Pacor*. Plaintiffs' reliance on *Pacor* is misplaced, however. In *Pacor*, those plaintiffs sued a chemical distributor over work-related exposure to asbestos. In turn, the distributor filed a third-party complaint impleading the manufacturer of the asbestos. The Third Circuit concluded that the original lawsuit was *not* related to the bankruptcy of the manufacturer because "the bankruptcy estate

7

could not be affected in any way until [the] third party action is actually brought and tried." *Pacor, Inc. v. Higgins*, 743 F.2d at 994. However, in dicta, the court distinguished a case where, as here, a *written* indemnification agreement existed, concluding that the written indemnification agreement would give rise to "related to" jurisdiction. *Id.* at 995.

This order concludes that the indemnification rights of the individual and underwriter defendants render these actions "related to" the SunEdison's bankruptcy action.

### B.  Section 22(a).

Plaintiffs argue that removal is barred here by Section 22(a) of the 1933 Securities Act, codified at 15 U.S.C. 77v(a). Section 22(a) provides for concurrent jurisdiction in state and federal courts over alleged violations of the Act. In addition, Section 22(a) forbids removal of actions that are brought in state court and that assert claims brought under the Act: "no case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States." 15 U.S.C. 77v(a). The only cases that are excepted under this removal bar are certain defined class actions.

Courts are divided over whether the removal bar of Section 22(a) trumps the bankruptcy removal provisions of Section 1452(a). *See Fed. Home Loan Bank of San Francisco v. Deutsche Bank Sec., Inc.*, No. 10-3039 SC, 2010 WL 5394742, at *5 (N.D. Cal. Dec. 20, 2010) (Judge Samuel Conti) (summarizing split of authority). Our court of appeals has not yet reached the issue. The only appellate court to address the issue, the Second Circuit, concluded that the bankruptcy removal provision of Section 1452(a) trumps Section 22(a). *California Pub. Employees' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 108 (2d Cir. 2004). This order finds the Second Circuit's analysis in *WorldCom* persuasive and concludes that Section 1452(a) trumps Section 22(a)'s removal bar.

In *WorldCom*, the Second Circuit applied the statutory rule of interpretation that "a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment" unless there is a clear intention otherwise. *Id.* at 101 (quoting *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976)). The Second Circuit concluded that Section 22(a) was *not* more specific than Section 1452(a). "[T]he class of claims covered by Section

8

22(a) is no more specific than the class of claims covered by Section 1452(a). . . .Rather, just as Section 1452(a) applies to many claims that are not brought under the 1933 Act, Section 22(a) applies to many claims that are not "related to" a bankruptcy." *Id.* at 102.

The Second Circuit further noted that, even if Section 22(a) *were* more specific than Section 1452(a), the Supreme Court's analysis in *Radzanower* would counsel against a conclusion that Section 22(a) trumps Section 1452(a). "The Supreme Court in *Radzanower* indicated that where the application of a specific statute would 'unduly interfere' with the operation of a general statute that was enacted subsequent to the specific statute, the more general statute controls." *Id.* at 103. The Second Circuit concluded that, "[w]ere Section 22(a) construed to trump Section 1452(a), Section 22(a) could interfere with the operation of the Bankruptcy Code, especially in large chapter 11 cases." *Ibid.*

The Second Circuit next analyzed the statutory conflict under the rule of recency. The plaintiffs in *WorldCom*, like our plaintiffs here, argued that because Section 22(a) was amended by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") in 1998, it trumped Section 1452(a), which was enacted in 1984. The Second Circuit dismissed this argument, however, concluding that SLUSA expanded federal jurisdiction over class actions but that "nothing in the text or legislative history of SLUSA indicates that Congress intended to alter the jurisdictional scheme applicable to *individual* actions under the 1933 Act." *Id.* at 104 (emphasis in original).

The Second Circuit then analyzed the bankruptcy removal provision of Section 1452(a) within its statutory framework of the federal jurisdictional scheme to determine if Congress intended to except from it claims made nonremovable by another act of Congress. The court first analyzed the general removal statute, Section 1441, which, by its terms, permits removal "[e]xcept as otherwise expressly provided by Act of Congress." In contrast, Section 1452(a) contains no such express exception for federal claims that are nonremovable under an Act of Congress. The court concluded that the absence of such an exception in Section 1452(a) "suggests that, in 1978, when it originally enacted Section 1452(a) as part of the Bankruptcy Code, Congress did not intend for Section 22(a) and its analogues to bar removal of 'related to'

9

claims." Therefore, the court concluded that Section 1452(a) trumped Section 22(a) and that individual claims brought pursuant to the Securities Act of 1933 could therefore be removed if "related to" a bankruptcy action.

Plaintiffs argue that the Second Circuit's interpretation in *WorldCom* is in conflict with the decision by our court of appeals in *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031, 1034 (9th Cir. 2008). In *Luther*, our court of appeals concluded that the removal bar of Section 22(a) prevailed over the removal provisions of the Class Action Fairness Act. To reach this conclusion, our court of appeals concluded that Section 22(a) was a more specific statute versus the CAFA. "Here, the Securities Act of 1933 is the more specific statute; it applies to the narrow subject of securities cases and § 22(a) more precisely applies only to claims arising under the Securities Act of 1933. CAFA, on the other hand, applies to a 'generalized spectrum' of class actions." *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031, 1034 (9th Cir. 2008).

This order disagrees with plaintiffs' assertion that *Luther* and *WorldCom* are in conflict. The fact that our court of appeals concluded that Section 22(a) trumped the removal provisions in CAFA does not mandate the conclusion that Section 22(a) also trumps Section 1452(a). *First*, the removal provisions in CAFA and Section 1452(a) are different and exist within different statutory frameworks. *Second*, even if our court of appeals were to conclude that Section 22(a) *is* more specific than Section 1452(a), our court of appeals could conclude, like the Second Circuit in *WorldCom,* that such an interpretation should be avoided under *Radzanower* because it would "interfere with the operation of the Bankruptcy Code, especially in large chapter 11 cases." *WorldCom, Inc.*, 368 F.3d at 103.

At least one other district court in this circuit has concluded that *Luther* does not mandate the conclusion that Section 22(a) trumps Section 1452(a). *Fed. Home Loan Bank of San Francisco v. Deutsche Bank Sec., Inc.*, No. 10-3039 SC, 2010 WL 5394742, at *6 (N.D. Cal. Dec. 20, 2010). In that decision, Judge Sam Conti concluded that Section 22(a) does *not* bar removal of actions "related to" a bankruptcy action under Section 1452(a).

10

This order agrees with the Second Circuit in *WorldCom* and concludes that Section 22(a) does *not* bar removal of actions "related to" a bankruptcy action under Section 1452(a). The Court certifies this issue for interlocutory review under 28 U.S.C. 1292(b).

### C.     Equitable Factors.

Under Section 1452(b), a district court "may remand such claim or cause of action on any equitable ground." Plaintiffs argue that even if removal is permitted under Section 1452(a), the Court should remand on equitable grounds. This order concludes that equitable factors do not warrant remand here.

This order acknowledges that these actions will likely be litigated in the district court as opposed to the bankruptcy court if transferred to New York. Nevertheless, that district court there will be in a better position than a state court here to coordinate with the bankruptcy court when needed. For example, discovery will likely require intervention by the bankruptcy court since that court will presumably control SunEdison's documents. Settlement, too, will likely require intervention by the bankruptcy court. This order concludes that the proximity of the district court there to the bankruptcy court there will enable it to more easily regulate these matters.

Plaintiffs argue that a transfer would deprive them of the ability to command live testimony of nonparty witnesses who reside in California. This argument is unconvincing. The Court provided plaintiffs with an extended opportunity to identify specific witnesses who reside in California. Plaintiffs came up short. In their supplemental brief, plaintiffs merely asserted that "SunEdison's former Chief Financial Officer ("CFO") for Latin American projects is based in Belmont, CA, as is its former CFO responsible for Global Manufacturing and many members of its Global Project Finance Team" (Supp. Br. 5). Plaintiffs assert that they "will not be able to identify their trial witnesses before discovery" (*ibid*.). This is not convincing. Plaintiffs do not need discovery to identify at least some names and positions of potential witnesses. This order concludes that it is just as likely that more witnesses will testify live if the actions are transferred to New York given that at least some of the underwriter defendants are based there.

11

The absence of California claims also weighs against remand. *Cobalt* and *Bloom* assert only federal securities claims. *Omega* and *Glenview* assert claims under Maryland securities law and Maryland and Delaware common law. A California court will be in no better position than a federal court to interpret Maryland and Delaware law. Moreover, federal securities law provides the backbone of the complaints. This factor weighs against remand.

This order acknowledges the possibility of a comparative delay if the actions are transferred to New York (versus a remand). This possibility, however, may be mitigated somewhat by the ability of the district court to more easily coordinate discovery and settlement issues with the bankruptcy court.

This order concludes that equitable factors do not favor remand here. The motions to remand are therefore **DENIED**.

### 2. MOTION TO TRANSFER.

The parties dispute whether Section 1412 or Section 1404 applies to the transfer motions. This order concludes that Section 1412 governs transfer here. Under Section 1412, a district court "may transfer a case or proceeding under Title 11 to a district court for another district in the interest of justice or for the convenience of the parties."

Here, the interest of justice and the convenience of the parties warrant transfer. *First*, the proximity of the New York district court to the bankruptcy court will enable it to more efficiently adjudicate the claims. *Second*, plaintiffs' choice of forum is undercut by the apparently undisputed fact that plaintiffs do not reside in California.[2] *Finally*, the complaints do not allege any California claims.

Little precedent exists for the removal and subsequent transfer of securities actions such as these. Based on the experience level so far, this order concludes that transfer is the most practical option. Experience will eventually teach us how productive (or not) the transfer proves to be.

---

[2] At the hearing, defense counsel asserted that none of the plaintiffs reside in California. Plaintiffs did not dispute that assertion at the hearing or in their supplemental briefing. Moreover, none of the complaints allege that any plaintiff resides in California. Furthermore, defendants submit declarations that the plaintiffs in *Omega*, *Glenview*, and *Cobalt* reside elsewhere according to SEC filings.

12

The motions to transfer are **GRANTED**.

## CONCLUSION

For the reasons stated herein, plaintiffs' motions to remand are **DENIED** and defendants' motions to transfer are **GRANTED**.

The Court hereby certifies the following issue for interlocutory review under Section 1292(b): whether Section 22(a) of the 1933 Securities Act bars removal of actions "related to" a bankruptcy action pursuant to Section 1452(a). The Court finds that this order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.

This order **STAYS** these four actions until September 5, 2016, the deadline for plaintiffs to file a petition pursuant to Section 1292(b) and, if such a petition is filed, until such time as our court of appeals acts on it.

**IT IS SO ORDERED.**

Dated: August 26, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE